UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

CALVIN E. CARSON,

                          Plaintiff,


v.

                                             **REPORT**
                                            **AND**
                                **RECOMMENDATION**

                                    13-CV-1200A


CAROLYN COLVIN, Acting
Commissioner of the
Social Security Administration,

                          Defendant.
_____


## INTRODUCTION

       This case has been referred to me by Hon. Richard J. Arcara for supervision of pretrial

proceedings, including the preparation of a Report and Recommendation on dispositive motions.

[10].[1] This is an action brought pursuant to 42 U.S.C. §405(g) to review the final determination

of the defendant Acting Commissioner of Social Security that plaintiff was not entitled to Social

Security Disability Insurance Benefits ("DIB") and Supplemental Security Income Benefits

("SSI"). Before me are the parties' cross-motions for judgement on the pleadings [9, 12].

       For the reasons stated below, I recommend that this case be remanded to the Acting

Commissioner for further proceedings.

---

[1]   Bracketed references are to the CM/ECF docket entries.

# BACKGROUND

Plaintiff Calvin E. Carson filed an application for DIB on December 17, 2009 (T. 97, 152, 155) and for SSI on January 12, 2010 (T. 98).[2] He alleges a disability onset date of September 23, 2008 (T. 41).[3] His initial application was denied (T. 100-05). An administrative hearing was subsequently held before Administrative Law Judge Nancy Gregg Pasiecznik on June 8, 2011 (T. 38). On June 27, 2012, ALJ Pasiecznik determined that although plaintiff was unable to perform his past relevant work, he retained the residual functional capacity to preform substantial gainful activity (T. 22, 26). On October 10, 2013, the Appeals Council refused to alter ALJ Pasiecznik's decision making the ALJ's determination the final decision of the Acting Commissioner (T. 2-7).  Plaintiff thereafter commenced this action.

The plaintiff alleges that he is disabled as a result of restrictions in the use of both hands and his right arm due to bilateral carpel tunnel syndrome and bilateral ulnar neuropathy (T. 17, 58). Plaintiff was born in 1960 and was 48 years old at the time of the hearing (T. 42). He has a tenth grade education and attended special education classes (T. 60, 181). His past relevant work was as an air conditioner coil assembler, a sorter/inspector of agricultural produce, a conveyor feeder-offbearer, an industrial cleaner, a janitor, a construction worker, a laborer, and a salvager (T. 23).

ALJ Pasiecznik determined that plaintiff suffered from bilateral carpel tunnel syndrome, and bilateral ulnar neuropathy with acute and chronic denervation on the left and chronic denervation on the right (T. 17). ALJ Pasiecznik determined that plaintiff retained the residual

---

[2]   References denoted as "T" are to the transcript of the administrative record.

[3]   Plaintiff originally alleged and onset date of April 1, 2008 (T. 97). Plaintiff amended the alleged onset date during administrative hearing (T. 41).

functional capacity to perform light work with limitations as to how much he could lift and carry (T. 18).

Plaintiff argues that the Acting Commissioner's decision must be vacated because: (1) ALJ Pasiecznik failed to properly evaluate medical opinions of plaintiff's treating physician, and (2) ALJ Pasiecznik failed to develop the record. Plaintiff's Memorandum of Law [9-1], pp.11-16.

## ANALYSIS

### A.  Standard of Review

The only issue to be determined by this Court is whether the Acting Commissioner's decision that plaintiff was not entitled to benefits is supported by substantial evidence.  See 42 U.S.C. §405(g); Rivera v. Sullivan, 923 F.2d 964, 967 (2d Cir. 1991).  The Social Security Act states that, upon review of the Acting Commissioner's decision by the district court, "[t]he findings of the Acting Commissioner  . . . as to any fact, if supported by substantial evidence, shall be conclusive ". 42 U.S.C. §405(g). Substantial evidence is that which a "reasonable mind might accept as adequate to support a conclusion". Consolidated Edison Co. of New York. Inc. v. NLRB, 305 U.S. 197, 229 (1938).

For purposes of entitlement to disability insurance benefits, a person is considered disabled when he or she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months". 42 U.S.C. §§423(d)(1)(A) & 1382c(a)(3)(A). Such a disability will be found to exist only if an individual's "physical or mental impairment or impairments are of such severity that

[he or she] is not only unable to do [his or her] previous work but cannot, considering [his or her]

age, education, and work experience, engage in any other kind of substantial gainful work which

exists in the national economy . . . ."  42 U.S.C. §§423(d)(2)(A) & 1382c(a)(3)(B).

In order to determine whether plaintiff is suffering from a disability, the Acting

Commissioner must employ a five-step inquiry:

> 1. The Acting Commissioner considers whether the claimant is currently engaged in substantial gainful activity.

> 2. If not, the Acting Commissioner considers whether the claimant has a 'severe impairment' which limits his or her mental or physical ability to do basic work activities.

> 3. If the claimant has a 'severe impairment,' the Acting Commissioner must ask whether, based solely on medical evidence, claimant has an impairment listed in Appendix 1 of the regulations. If the claimant has one of these enumerated impairments, the Acting Commissioner will automatically consider him disabled, without considering vocational factors such as age, education, and work experience.

> 4. If the impairment is not 'listed' in the regulations, the Acting Commissioner then asks whether, despite the claimant's severe impairment, he or she has residual functional capacity to perform his or her past work.

> 5. If the claimant is unable to perform his or her past work, the Acting Commissioner then determines whether there is other work which the claimant could perform.

The Acting Commissioner bears the burden of proof on this last step, while the claimant

has the burden on the first four steps. Talavera v. Astrue, 697 F.3d 145 (2nd Cir. 2012) (*citing*

DeChirico v. Callahan, 134 F.3d 1177, 1179-80 (2nd Cir.1998)); *see also* 20 C.F.R. §§404.1520,

416.920.    Moreover, the ALJ has an affirmative duty to fully develop the record where

deficiencies exist. Gold v. Secretary, 463 F.2d 38, 43 (2d Cir. 1972); Swiantek v. Acting

Commissioner of Social Security, 588 Fed.Appx. 82, 84 (2nd Cir. 2015).

B.  **Weighing Treating Physician Opinion / Residual Functional Capacity Assessment**

Plaintiff argues that ALJ Pasiecznik failed to properly weigh the opinion of Dr. Paul D. Paterson, the treating physician who performed various surgeries on plaintiff relating to his carpel tunnel and ulnar nerve issues. Plaintiff's Memorandum of Law [9-1], p. 11. The Acting Commissioner asserts that Dr. Paterson's reports supported ALJ Pasiecznik's residual functional capacity assessment and was adopted by the ALJ. Acting Commissioner's Memorandum of Law [12-1], p. 16.

The "treating physician rule" directs the Acting Commissioner to give controlling weight to the opinion of the treating physician so long as it is consistent with the other substantial evidence. Halloran v. Barnhart, 362 F.3d 28, 32 (2nd Cir. 2004) (*per curiam*); 20 C.F.R. §404.1527(c)(2). When an ALJ discredits the opinion of a treating physician, the regulations direct the ALJ to "always give good reasons in [the] notice of determination or decision for the weight [given a] treating source's opinion". 20 C.F.R. §404.1527(c)(2); Snell, 177 F.3d at 134. The ALJ first must consider: (1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship; (3) the evidence that supports the treating physician's report; (4) how consistent the treating physician's opinion is with the record as a whole; (5) the specialization of the physician in contrast to the condition being treated; and (6) any other significant factors. Halloran, 362 F.3d 28, 32; *see also* 20 C.F.R. §§404.1527(c)(2)-(6).  The Second Circuit has advised that the courts should not "hesitate to remand when the Commissioner has not provided 'good reasons' for the weight given to a treating physician[']s opinion". Halloran, 362 F.3d at 33.

Here, the record reflects that plaintiff underwent nerve conduction studies and an EMG of the upper extremities on January 21, 2008 (T. 441). Test results revealed: (1) mild to moderate bilateral carpal tunnel syndrome (median nerve entrapment at rest) affecting sensory and motor components; (2) moderate to severe left ulnar neuropathy at the left elbow involving motor components with acute and chronic denervation of the distal ulnar muscles; and (3) moderate to severe right ulnar neuropathy at the elbow involving motor components with chronic denervation of the distal ulnar muscles. Id.

In early 2008, shortly after the nerve conduction studies, plaintiff was seen by Dr. Joseph Bax, who recommended surgery (T. 355, 435).[4] On February 29, 2008, plaintiff saw Dr. Mark Mieth, an orthopedic surgeon who also recommended surgery (T. 436). Dr. Mieth recommended that Dr. Paterson perform the surgery (T. 437). Dr. Paterson saw plaintiff on March 28, 2008 and also recommended surgery (T. 430). Dr. Paterson performed right carpal tunnel release and right endoscopic cubital tunnel release surgery on September 23, 2008 (T. 447). On October 6, 2008, plaintiff's first post-operative visit, Dr. Paterson opined that plaintiff was 100% disabled at that time (T. 417). On October 27, 2008, he stated that plaintiff could lift/carry/push/pull less than 10 pounds; could not perform repetitive gripping and grasping; and could rarely use his hands for simple or fine grasping and manipulation (T. 413).  Dr. Paterson continued these restrictions after examinations on December 4, 2008 (T. 367) and March 16, 2009 (T. 404).  On June 17, 2009, plaintiff underwent left carpal tunnel release surgery with Dr. Paterson (T. 451).  After a post-operative visit on June 29, 2009, Dr. Paterson again stated that plaintiff was totally disabled (T. 342).

---

[4]    Documents relating to plaintiff's visit with Dr. Bax are not in the record but the examination is referred to in reports by Dr. Melvin Brothman (T. 355) and Dr. Jennifer Adamson (T. 435).

On July 31, 2009, Dr. Paterson stated that, as of August 3, 2009, plaintiff could return to work with the following restrictions: plaintiff could lift/carry/push/ pull less than 20 pounds, could not use his hands for repetitive gripping or grasping, and could only perform simple grasping and fine manipulation occasionally (T. 338).   On August 5, 2009, Dr. Paterson repeated these restrictions (T. 358).

On September 11, 2009, Dr. Paterson noted that plaintiff  had "improved a bit" and issued new work restrictions providing that plaintiff could lift/carry/push/pull less than 30 pounds, could use his hands for limited repetitive motion and reach, and could occasionally use his hands for simple grasping and fine manipulation (T. 335). On November 6, 2009, Dr. Paterson stated that plaintiff "is minimally improved. I think he has rapidly reached maximum medical improvement. He may have a permanent disability that prevents him from returning to his previous employment" (T. 331). He continued plaintiff on the same restrictions as set on September 11, 2009. Id.

Plaintiff again saw Dr. Paterson on December 29, 2009. At that time, Dr. Paterson stated that "no clinical change" was noted and that plaintiff's "prognosis for improvement beyond this point is very small" (T. 327). He increased plaintiff's work restrictions back to the pre-September 11, 2009 level, finding that plaintiff could lift/carry/push/pull less than 20 pounds, could use his hands for repetitive motion only on a limited basis, and could perform simple grasping and fine manipulation only occasionally. Id. Dr. Paterson stated that he would "continue expectant management" and would see plaintiff again in six to eight weeks. Id. The record does not appear to include records of any subsequent visits by plaintiff to Dr. Paterson.

Plaintiff was also seen on three occasions by Dr. Melvin Brothman, who served as an independent medical examiner on behalf of the Liberty Mutual Insurance Group. Dr. Brothman's

initial examination on May 13, 2008 revealed a positive Tinel's sign, as well as a positive

Phalen's test on the right, with diminished sensation over the median nerve distribution to the

right hand (T. 356). Dr. Brothman found that plaintiff's left forearm had atrophied ¼ inch

compared to his right forearm. He found that plaintiff had 60 pounds of grip strength in his right

hand, and 70 pounds of grip strength in his left hand. Id. Dr. Brothman found that plaintiff's

impairment was related to his employment. Id. Although he did not review the prior EMG nerve

study, Dr. Brothman stated that if Dr. Mieth's interpretation of the study was accurate, plaintiff

was a candidate for bilateral surgery (T. 357).

Dr. Brothman examined plaintiff again on February 24, 2009 (T. 352). On that occasion,

Dr. Brothman noted that Dr. Paterson had performed carpal tunnel and ulnar nerve surgery on

plaintiff's right arm and hand in September 2008. Id. He noted that plaintiff still complained of

numbness and tingling in his right wrist and hand (T. 353). He also noted that plaintiff's left

hand had numbness and tingling going from the thumb, index and middle finger which caused

him to wake up at night. Id. Upon examination, Dr. Brothman found Phalen's tests were positive

bilaterally, but otherwise the exam was unremarkable (T. 354). Dr. Brothman did not make a

residual functional capacity assessment at that time.

Upon his third examination of plaintiff on October 29, 2009, Dr. Brothman noted that Dr.

Paterson had performed surgery on plaintiff's left arm and wrist in June 2009 (T. 349). Dr.

Brothman stated that plaintiff continued to experience numbness and tingling in all of the fingers

on his left hand and in two of the fingers in his right hand (T. 350). He stated that based upon

these complaints, plaintiff did not appear to be responding to the treatment. Id. Upon

examination, Dr. Brothman noted that the atrophy of plaintiff's left forearm had increased to ½

inch compared to his right forearm.  Id. Further, plaintiff's grip strength was down to 30 pounds

in his right hand and 20 pounds in his left hand. Id. He stated that plaintiff should continue to follow up with Dr. Paterson and that plaintiff should undergo bilateral EMG nerve conduction studies (T. 351). Dr. Brothman did not make a full residual functional capacity assessment but did state that plaintiff "could return to work with restrictions to avoid repetitive action and lifting rapidly or picking up more than 15-20 pounds repetitively". Id.

In light of this record, ALJ Pasiecznik issued the following tripartite residual functional capacity evaluation of the plaintiff:

1. From the alleged onset date of September 23, 2008 through August 3, 2009, plaintiff had no limitations in his ability to sit, stand or walk; but he could lift, carry, push and pull no more than five pounds; he was unable to perform repetitive gripping or grasping; he could rarely perform simple grasping or fine manipulations.

2. As of August 3, 2009 until November 6, 2009, plaintiff had no limitation in the ability to sit, stand, or walk; but he could lift, carry, push and pull up to ten pounds but less than 20 pounds; he was unable to perform repetitive gripping or grasping; he could occasionally do simple grasping and fine manipulation; he was able to occasionally reach with the right (dominant) upper extremity, but no repetitive reaching (defined as frequently or continuously); and he was unfamiliar with the use of a computer and would have significant difficulty learning.

3. Since November 6, 2009, plaintiff had no limitation in the ability to sit, stand or walk; but he could lift, carry, push or pull at least 20 pounds occasionally but less than 30 pounds occasionally; he was unable to lift, carry, push or pull or than 15 to 20 pounds repetitively, but can lift, carry, push and pull 15 pounds; he was able to occasionally do simple grasping and fine manipulation; he was able to occasionally reach with the right (dominant) upper extremity, but could not do repetitive reaching (defined as frequently or continuously); and he was unfamiliar with the use of the computer and would have significant difficulty learning.

(T. 18).

Vocational expert Jay Steinbrenner testified at the administrative hearing (T. 80). ALJ Pasiecznik first asked Steinbrenner to assume a hypothetical person between 40 and 49 years old, with limited education, plaintiff's past relevant work history, and who had no limitations in the ability to sit, stand or walk, but was limited in lifting, carrying, pushing, pulling less than 10

pounds, could not perform repetitive gripping or grasping and could rarely perform simple grasping and fine manipulations (T. 81). Steinbrenner testified that such a person could not perform any work.[5] Id.

As a second hypothetical, ALJ Pasiecznik posed the following: "assume that the individual has no limitations in the ability to sit, stand or walk, cannot perform repetitive gripping work grasping, may use the hands for occasional simple grasping and occasional fine manipulation and no repetitive reaching with the right dominant extremity. That means frequent or constant, can occasionally do it and no other limitations". Id. In addition, ALJ Pasiecznik included the restriction that the individual was able to lift, carry, push and pull at least 10 pounds but less than 20 pounds (T. 82). Steinbrenner testified that such an individual could not perform plaintiff's past relevant work, but would be able to work as an usher/lobby attendant (DOT 344.677- 014), and telephone survey worker (DOT 205.367-054) (T. 82). Steinbrenner noted that the DOT lists the telephone survey worker position under the "light work" category because they include census workers and door-to-door survey workers in this category (T. 83). He stated that telephone survey workers would work strictly at a sedentary exertion level. Id. ALJ Pasiecznik asked Steinbrenner if such an individual could perform this work if they had significant difficulty learning how to use a computer. Id. Steinbrenner testified that such a person could still perform the telephone survey work. Id.

ALJ Pasiecznik's final hypothetical proposed an individual who had the same characteristics as in the second hypothetical but who could lift, carry, push and pull "at least 20 pounds occasionally but less than 30 pounds occasionally", "cannot lift, carry, push or pull more than 15 to 20 pounds repetitively but can lift, carry, push and pull 15 pounds occasionally", and

---

[5]   ALJ Pasiecznik found that plaintiff was not capable of performing any work during this 11-month period, but noted that to be eligible for benefits plaintiff's inability to work must last for a continuous period of not less than 12 months (T. 26).

can "use [his] hands for simple grasping and fine manipulation occasionally" (T. 83-84). Steinbrenner stated that such a person could perform the work of an usher, a school bus monitor and a telephone survey worker (T. 84-85, 88).  On examination by plaintiff's representative, Steinbrenner stated that plaintiff would not be able to perform any work if, consistent with plaintiff's hearing testimony, he was required to take 20 minute breaks approximately seven times a day to relieve the tingling and pain in his right arm (T. 89).

ALJ Pasiecznik determined that based upon Steinbrenner's testimony regarding the first hypothetical, there was no work available in the national or regional economy that plaintiff could perform from September 23, 2008 (his amended alleged onset date) until August 3, 2009 (T. 24). However, she found that from August 3, 2009 until November 6, 2009 plaintiff could perform the work of an usher/lobby attendant or telephone survey worker. Id. ALJ Pasiecznik determined that since November 6, 2009, plaintiff could perform the work of an usher/lobby attendant, a telephone survey worker, and a school bus monitor (T. 25). Plaintiff argues that ALJ Pasiecznik's second and third residual functional capacity evaluations do not properly reflect the restrictions set by Dr. Paterson. Plaintiff's Memorandum of Law [13], pp. 11-14.


Period Since November 6, 2009

ALJ Pasiecznik's determination that since November 6, 2009 plaintiff could lift, carry, push and pull at least 20 pounds but less than 30 pounds is not supported by substantial evidence in the record. Such a finding is contrary to the restrictions set by Dr. Paterson on December 29, 2009, limiting plaintiff to lifting, carrying, pushing and pulling "less than 20 pounds" (T. 327). Although Dr. Paterson had attempted to increase plaintiff's activity level after his September 11, 2009 examination (T. 335), during his next examination of plaintiff on November 6, 2009, he

determined that plaintiff had "reached maximum medical improvement" (T. 331). After his December 29, 2009 examination of plaintiff, Dr. Paterson stated that plaintiff's "prognosis for improvement beyond this point is very small" (T. 327). Based on these findings, Dr. Paterson adjusted plaintiff's restrictions back to lifting, carrying, pushing and pulling "less than 20 pounds". Id.

Although ALJ Pasiecznik mentions Dr. Paterson's December 29, 2009 examination findings (T. 22), she makes no attempt to weigh Dr. Paterson's opinion or to otherwise discuss the changes Dr. Paterson made with respect to plaintiff's work restrictions. She does not suggest that her post-November 6, 2009 residual functional capacity assessment is based upon Dr. Brothman's reports, nor make any attempt to weigh any distinctions between the findings of Dr. Brothman and Dr. Paterson.[6]  Indeed, ALJ Pasiecznik makes no attempt to support her conclusion that plaintiff could lift, carry, push and pull "at least 20 pounds occasionally but less than 30 pounds occasionally" in light of Dr. Paterson's December 29, 2009 findings. This case should be remanded so that the Acting Commissioner can properly make a residual functional capacity of plaintiff since November 6, 2009.

Period Between August 3, 2009 and November 6, 2009

Plaintiff argues that ALJ Pasiecznik's residual functional assessment for the period between August 3, 2009 and November 6, 2009 is also not supported by the record. In this

---

[6]    The reports of Dr. Brothman, a non-treating physician who examined plaintiff on three occasions on behalf of an insurance carrier, show that he tracked Dr. Paterson's treatment of plaintiff (T. 349, 350, 352, 353, 355, and 356). After his October 12, 2009 examination, Dr. Brothman stated that plaintiff should "avoid repetitive action and lifting rapidly or picking up more than 15-20 pounds repetitively" (T. 351). This was during the time period in which Dr. Paterson had restricted plaintiff from lifting or carrying "less than 30 pounds" (T. 335). ALJ Pasiecznik does not point to this finding as the specific basis for any of her residual functional capacity assessments, nor does she assert that Dr. Brothman's opinion should be given more weight than the opinion of Dr. Paterson. In any event, Dr. Brothman's examination findings, including the atrophy of plaintiff's left forearm, and a significant decrease in plaintiff's bilateral grip strength from May 2008 to October 2009, support Dr. Brothman's notation that plaintiff "does not appear to be responding to the treatment" (Id.) and are consistent with Dr. Paterson opinions.

regard, plaintiff asserts that under the restrictions set by Dr. Paterson, he was capable of only sedentary work and that the survey worker and usher jobs identified by ALJ Pasiecznik constitute "light work". Plaintiff's Memorandum of Law [9-1], pp.13-14. Plaintiff asserts that this is particularly important since, according to the Medical-Vocational Guidelines contained in 20 C.F.R. 404, Subpart P, Appendix 2 ["Appendix 2"], a finding that plaintiff was limited to sedentary work would result in a determination that he was disabled once he turned 50 years old on January 18, 2010. Plaintiff's Memorandum of Law [9-1], p. 13.

Plaintiff acknowledges there is no evidence suggesting that he was limited in his ability to sit stand or walk, and that his exertional category is "wholly dependent on the lifting and carrying limitation". Plaintiff's Memorandum of Law [13], p. 4. According to 20 C.F.R. §404.1567(a), sedentary work "involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers and small tools". Conversely, light work is defined in 20 C. F. R. §404.1567(b) as involving "lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds".

Dr. Paterson's restriction that plaintiff lift, carry, push and pull "less than 20 pounds" exceeds the limit of "no more than 10 pounds" in the definition of sedentary work, but does not quite satisfy the "no more than 20 pounds" requirement in the definition of light work. Plaintiff argues that because the work restrictions set by Dr. Paterson do not allow him to perform the full range of light work as defined in section 404.1567(b), ALJ Pasiecznik was required to assess him as only being capable of sedentary work. Plaintiff's Memorandum of Law [13], p. 4.

SSR 83-12 provides a framework for evaluating exertional limitations within a range of work or between ranges of work. As an example, SSR 83-12 notes that in "some instances, an individual can do a little more or less than the exertion specified for a particular range of work:

e.g. a person is considered to be physically capable of meeting the exertional demands of light work except that he or she can lift no more than 15 pounds at a time rather than 20 pounds". Where an individual's exertional residual functional capacity does not coincide with the definition of any one of the ranges of work defined in §404.1567, the occupational basis reflected in the Appendix 2 guidelines is affected. Under such circumstances, SSR 83-12 provides that the adjudicator must consider the extent of any erosion of the occupational base in making a determination of whether work exists which a claimant can perform. Where the extent of the erosion of the occupational base is not clear, SSR 83-12 provides that vocational experts may testify to assist the ALJ in this determination.

Here, ALJ Pasiecznik referred to the Appendix 2 guidelines, as well as to SSRs 83-11,[7] 83-12, and 83-14,[8] noting that if plaintiff had the residual functional capacity to perform a full range of light work a finding of "not disabled" would be appropriate under Rules 202.17-202.19 (through age 49) and Rules 202.10-202.12 (from age 50 through 54) (T. 24). However, she noted that plaintiff could not perform "all or substantially all" of the requirements for light work. Id. ALJ Pasiecznik stated that she asked vocational expert Steinbrenner to testify at the hearing to address the extent to which plaintiff's limitations eroded the unskilled light work occupational base. Id. She then summarized the three hypothetical questions she posed at the administrative hearing and Steinbrenner's responses to those hypotheticals (T. 24-25).

---

[7]    SSR 83-11 provides that an individual's residual functional capacity "is defined by criteria that establish an exertional capability for a full range (all or substantially all) of the work existing at the level of exertion the question (sedentary, light, or medium). The residual functional capacity reflects an exertional capability sufficient to allow performance of substantially all of the primary strength activities required in the range of work existing at the specified level. According to SSR 83-11, the focus is on the term "substantially all" as it is used to define the minimum exertional capabilities that must be present. "For the purposes of determining whether the criteria of a rule are met, we consider 'substantially all' to mean essentially all as opposed to 'in the main' or 'for the most part'".

[8]    SSR 83-14 provides a framework for evaluating a combination of exertional and nonexertional impairments. Nonexertional impairments may or may not significantly narrow the range of work a person can do. SSR 83-14 states that in adjudicator can use the services of a vocational specialist in making a determination based upon a combination of exertional and nonexertional impairments.

All three of the jobs identified by Steinbrenner - survey worker, usher/lobby attendant, and school bus monitor - are classified as "light work" under the Dictionary of Occupational Titles ("DOT") (T. 290, 294 and 298).  ALJ Pasiecznik addresses this fact only with respect to the survey worker position. In this regard, she states that the DOT lists this job as requiring a light level of exertion due to the standing and walking involved because this job title includes census takers and location survey workers (T. 25). Noting the discrepancy between the DOT listing and Steinbrenner's testimony, ALJ Pasiecznik stated that the "vocational expert downgraded the job to sedentary to take into consideration survey workers who can conduct their work by telephone". Id.  Citing to SSR 00-4p, which addresses the resolution of conflicts and occupational information, ALJ Pasiecznik found that Steinbrenner's testimony on this issue was reasonable. Id.

However, nowhere in her decision does she address the fact that the usher/lobby attendant and survey worker positions call for exerting up to 20 pounds of force to move objects (T. 294 and 298). This is important, inasmuch as Steinbrenner had expressly eliminated the school bus monitor position as being available under hypothetical number two because such a position required an individual to exert 20 pounds of force (T. 82). Steinbrenner was not asked, and the record does not reflect, whether these positions could be performed without the need to exert 20 pounds of force. ALJ Pasiecznik made no finding, pursuant to SSR 00-4p, that the weight exertion requirements listed in the DOT with respect to the usher/lobby attendant and survey worker positions did not apply in this case. Further, the record does not reflect that such usher/lobby attendant and survey worker positions which do not require the exertion of 20 pounds of force exist in sufficient numbers in the national or regional economy. Because these

issues are not addressed, ALJ Pasiecznik's determination relating to the period between August 3, 2009 and November 6, 2009 is not supported by substantial evidence.

In sum, ALJ Pasiecznik failed to properly establish that plaintiff could perform work which existed in the national or regional economy in light of the restrictions set by his treating physician during either the second or third periods of her tripartite residual functional capacity assessment. This case should be remanded for further proceedings so that the Acting Commissioner can properly assess plaintiff's residual functional capacity and ability to perform work existing in the national or regional economy.

## C.  Failure to Develop the Record

Plaintiff also argues that ALJ Pasiecznik failed to properly develop the record in this case. Plaintiff's Memorandum of Law [9-1], p.14.  It is well established that where there are deficiencies in the record, an administrative law judge bears an affirmative duty to develop the administrative record. Tejada v. Apfel, 167 F.3d 770, 774 (2d Cir.1999);  Tomassi ex rel. v. Colvin, 2014 WL 316727, *6 (N.D.N.Y. 2014). The non-adversarial nature of Social Security proceedings requires the ALJ "to investigate the facts and develop the arguments both for and against granting benefits".  Sims v. Apfel, 530 U.S. 103, 111 (2000). This duty exists even where, as here, the claimant is represented by counsel. Rosa v. Callahan, 168 F.3d 72, 79 (2d Cir.1999) ("[W]here there are deficiencies in the record, an ALJ is under an affirmative obligation to develop a claimant's medical history 'even when the claimant is represented by counsel); *see also* Tomassi, 2014 WL 316727, at *6.

Plaintiff asserts that there are several gaps which should have been addressed by ALJ Pasiecznik including: (1) that plaintiff's medical records were last updated by the state agency on

December 17, 2009, leaving a 2½ year gap until ALJ Pasiecznik issued her decision on June 27, 2012; (2) that the records from plaintiff's prior SSD and SSI claims were not obtained; and (3) that plaintiff was not sent for consultative examination regarding his cognitive functioning notwithstanding claims that he had deficits which cause severe difficulty with reading and simple math preventing him from performing the work identified by the vocational expert. Plaintiff's Memorandum of Law [9-1], pp. 14-16.

The Acting Commissioner asserts that plaintiff has not identified doctors who treated him during the 2½ year period since Dr. Paterson's December 29, 2009 examination. Acting Commissioner's Memorandum of Law [12-1], p. 21. She states that "it should not be surprising that Dr. Paterson did not see plaintiff after December 29, 2009" because Dr. Paterson had stated that plaintiff had reached maximum medical improvement after the November 6, 2009 examination. Id. This argument does not account for the fact that the report of Dr. Paterson's December 29, 2009 examination expressly stated that he was going to "continue expectant management" and that he would "see [plaintiff] back in 6-8 weeks" (T. 327). Nor does it foreclose the possibility that plaintiff received treatment from other medical providers during the extended period between the last medical reports in the current record and the issuance of ALJ Pasiecznik's decision. The failure to seek updated medical records is accentuated in this case because of the extended 2½ year period between the date the state agency developed the record and the date of ALJ Pasiecznik's decision.

The Acting Commissioner argues that there was no need to develop the record regarding plaintiff's alleged cognitive difficulties because ALJ Pasiecznik considered plaintiff's allegation that he had limited reading and math skills. Acting Commissioner's Memorandum of Law [12-1], p. 23.  In this regard, ALJ Pasiecznik rejected plaintiff's argument that his limitations in

reading and math would interfere with his ability to perform the jobs identified by the vocational

expert (T. 25). She stated that his determination was supported by the fact that plaintiff failed to

allege he had been disabled due to any cognitive deficit and that plaintiff's past relevant work

included work that required reading and math skills according to the DOT (T. 25-26).

However, the fact that plaintiff may have been able to perform his past relevant work

notwithstanding limited reading and math ability does not necessarily mean such limitations do

not exist, or that they are immaterial to the assessment of plaintiff's residual functional capacity.

The record reflects that ALJ Pasiecznik was advised of plaintiff's cognitive difficulties, but that

she dissuaded plaintiff's counsel from inquiring about limitations relating to any cognitive issues

(T. 62). A proper assessment of plaintiff's residual functional capacity should include

consideration of whether plaintiff has limitations in his reading and math ability which would

impact his capacity to perform substantial gainful activity.

I have recommended that this case be remanded to the Acting Commissioner to properly

evaluate plaintiff's residual functional capacity. Upon remand, the Acting Commissioner should

further develop the record to determine if other relevant medical reports exist relating to

plaintiff's impairments during the relevant time periods.  The Acting Commissioner should also

develop the record as to whether plaintiff's reading and math limitations impact his ability to

perform substantial gainful activity.


**CONCLUSION**

For these reasons, I recommend that plaintiff's motion for judgment on the pleadings [9]

be granted to the extent that this case be remanded to the Acting Commissioner for further

proceedings consistent with this Report and Recommendation and that the Acting

Commissioner's motion for judgement on the pleadings [12] be denied.

Unless otherwise ordered by Judge Arcara, any objections to this Report and

Recommendation must be filed with the clerk of this court by December 21, 2015 (applying the

time frames set forth in Fed. R. Civ. P. ("Rules") 6(a)(1)(C), 6(d), and 72(b)(2)). Any requests

for extension of this deadline must be made to Judge Arcara. A party who "fails to object timely

. . . waives any right to further judicial review of [this] decision". Wesolek v. Canadair Ltd., 838

F. 2d 55, 58 (2d Cir. 1988); Thomas v. Arn, 474 U.S. 140, 155 (1985).

Moreover, the district judge will ordinarily refuse to consider de novo arguments, case

law and/or evidentiary material which could have been, but were not, presented to the magistrate

judge in the first instance. Patterson-Leitch Co. v. Massachusetts Municipal Wholesale Electric

Co., 840 F. 2d 985, 990-91 (1st Cir. 1988).

The parties are reminded that, pursuant to Rule 72(b) and (c) of this Court's Local

Rules of Civil Procedure, written objections shall "specifically identify the portions of the

proposed findings and recommendations to which objection is made and the basis for each

objection . . . supported by legal authority", and must include "a written statement either

certifying that the objections do not raise new legal/factual arguments, or identifying the new

arguments and explaining why they were not raised to the Magistrate Judge". Failure to comply

with these provisions may result in the district judge's refusal to consider the objections.

Dated: December 4, 2015

                                        /s/ Jeremiah J. McCarthy
                                        JEREMIAH J. MCCARTHY
                                        United States Magistrate Judge